Pamela THOMPSON, individually and as guardian of Gabriella Thompson, Matthew Thompson, Marcus Thompson, Michael Thompson; and the Thompson Group, P.C., an Arizona professional corporation, Plaintiff,

v.

George PAUL and Karen Paul, husband and wife; Tom Morgan; Scott Dewald and Deborah Jamieson, husband and wife; Lewis and Roca, LLP, An Arizona limited liability partnership; and Capitol Detective Agency, Inc., an Arizona corporation, Defendants.

**No. CIV 05 0990 PHX MHM.**

United States District Court,
D. Arizona.

Dec. 5, 2005.

Charles C. Weller, Charles C. Weller APC, La Jolla, CA, James M. Laganke, James M. Laganke PLLC, Phoenix, AZ, for Plaintiff.

Hal Michael Clyde, Paul F. Eckstein, Todd Robert Kerr, Perkins Coie Brown & Bain PA, David S. Rosenthal, Gregory Alan Rosenthal, Rosenthal Law Offices, Phoenix, AZ, for Defendants.

## ORDER

MURGUIA, District Judge.

Currently, before the Court is Defendants Lewis and Roca, LLP's [1] Motion to Dismiss. (Dkt.# 11). After reviewing the motion and hearing oral argument on Oc-

---

1. Defendants Lewis and Roca referred to collectively, also include Defendants George Paul, Karen Paul, Tom Morgan, Scott Dewald and Deborah Jamieson. Defendant Capitol Detective Agency did not join in the instant motion to dismiss.

tober 20, 2005, the Court issues the following order.

## I. Factual Background

Pamela Thompson, resigned as Chief Financial Officer, Secretary, and Treasurer of YP.net in May, 2002. Compl. ¶ 17. Thompson's resignation was motivated by ethical and professional concerns regarding accounting and disclosure practices of YP.net and Angelo Tullo, Chief Executive Officer of YP.net. *Id.* Upon receiving Ms. Thompson's resignation, YP.net, represented by the Lewis & Roca Defendants, sued Ms. Thompson and Ms. Thompson countersued. Compl. ¶ 26. Plaintiffs maintain the Lewis and Roca Defendants instituted this baseless litigation to harass Ms. Thompson and to prevent her from disclosing information to law enforcement regarding the criminal investigation of Mr. Tullo. Compl. ¶¶ 26–32.

On April 22, 2004, the parties entered settlement negotiations. Compl. ¶ 37. Plaintiffs contend Ms. Thompson relied on the Lewis and Roca Defendants false representations when accepting YP.net's settlement offer, comprising of YP.net's Common Stock. Compl. ¶ 38. Specifically, Plaintiffs assert the Lewis and Roca Defendants falsely represented that there was no criminal investigation targeted at Mr Tullo. Compl. ¶ 37. "Moments before the final settlement documents" were executed, Lewis & Roca withdrew as counsel. Compl. ¶ 41. As a result of the withdrawal of Lewis and Roca, settlement was finalized on May 24, 2004. Compl. ¶ 42. Plaintiffs maintain due to Lewis and Roca's withdrawal and false misrepresentation, Ms. Thompson was unable to sell her YP.net stock before the government indicted Mr. Tullo, and consequently, the value of Ms. Thompson's settlement plummeted. Compl. ¶¶ 44,45.

Plaintiffs filed their complaint on April 1, 2005 alleging claims for: 1) violation of section 10(b) of the Securities and Exchange Act; 2) Abuse of Process; 3) Wrongful Institution of Civil Proceedings; 4) Fraudulent Misrepresentation; 5) Negligent Misrepresentation; 6) Third Party Professional Negligence; 7) Tortious Interference with Contractual Relations; 8) Intentional Infliction of Emotional Distress; and 9) Negligent Infliction of Emotional Distress. Compl. ¶¶ 46–131. Named as Defendants are Lewis and Roca LLP, George Paul, Karen Paul, Tom Morgan, Scott Dewald and Deborah Jamieson ("Lewis and Roca Defendants"). Compl. ¶¶ 6–10. Also named as a defendant is Capitol Detective Agency, who did not join in the instant motion to dismiss. *Id.* at ¶ 11.

## II. Legal Standard

 "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Development Corp.,* 108 F.3d 246, 249 (9th Cir.1997). Accordingly, the court will not dismiss a complaint unless it appears beyond a doubt that the plaintiff can prove no set of facts to support the claim that would entitle the plaintiff to relief. *Morley v. Walker,* 175 F.3d 756, 759 (9th Cir. 1999). However, "the court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001).

 In determining whether a complaint states a claim, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Wyler Summit Partnership v. Turner Broad. Sys. Inc.,* 135 F.3d 658, 661 (9th Cir.1998). As such, an inquiry into the adequacy of the evidence is improper

when deciding whether to dismiss for failure to state a claim. *Enesco Corp. v. Price/Costco, Inc.,* 146 F.3d 1083, 1085 (9th Cir.1998).

## III. Discussion

### A. Fraudulent Misrepresentation, Negligent Misrepresentation, and Third Party Professional Negligence. (Counts 1, 4, 5, and 6)

 A cause of action against opposing counsel for statements made during litigation is strictly limited to actions alleging malicious prosecution, also known as wrongful institution of civil proceedings. *Linder v. Brown & Herrick,* 189 Ariz. 398, 943 P.2d 758, 766 (1997) (dismissing claims of fraud and intentional infliction of emotional distress against opposing counsel for failure to state a claim). An attorney's duty to a nonclient arises only if the nonclient is an "intended beneficiary" of the attorney's services. *Wetherill v. Basham,* 197 Ariz. 198, 3 P.3d 1118, 1128 (2000). "[A]n adverse party is not an intended beneficiary of the adverse counsel's client." *Lewis v. Swenson,* 126 Ariz. 561, 617 P.2d 69, 72 (1980) (internal quotation omitted). Imposition of a duty to an individual, other than an "intended beneficiary" would offend public policy by "plac[ing] an attorney in a position where his own interests would conflict directly with his client's interests." *Id.* Additionally, "as a matter of law and common sense, [Ms. Thompson] had no right to rely on statements made by the attorneys opposing [her]." *Linder,* 943 P.2d at 765.

 A section 10(b) action requires justifiable reliance on alleged misrepresentations. *Atari Corp. v. Ernst & Whinney,* 981 F.2d 1025 (9th Cir.1992). The securities laws create liability for misrepresentations only in the event of a "substantial likelihood that the misrepresentation significantly altered the total mix of informa-

tion that the investor possesse[d]." *Id.* at 1030. "If the investor already possesses information sufficient to call the representations into question, he cannot claim later that he relied on or was deceived by the lie." *Id.* As noted above, Ms. Thompson had no right to rely on statements made by the attorneys opposing [her]. *Linder,* 943 P.2d at 765.

Plaintiff's reliance on *Paradigm Ins. Co. v. Langerman Law Offices, P.A.,* 200 Ariz. 146, 24 P.3d 593 (2001), is unavailing under the facts presented here. While the Arizona Supreme Court in *Paradigm* found a duty existed between an attorney and a nonclient, the nonclient, unlike Plaintiff, was an intended beneficiary of the attorney's services. *Id.* at 602. As an adverse party Plaintiff was not an intended beneficiary of Defendant's services, thus Defendants owed no duty to Plaintiff. Accordingly, Plaintiff's have failed to state a claim for fraudulent misrepresentation, negligent misrepresentation, and third party professional negligence.

### B. Abuse of Process (Count 2)

 While Arizona courts recognize claims for abuse of process against opposing counsel, *Giles v. Hill Lewis Marce,* 195 Ariz. 358, 988 P.2d 143, 146 (1999), an actionable claim for abuse of process requires both an ulterior purpose and a willful act in the use of judicial process not proper in the regular conduct of the proceeding. *Giles,* 988 P.2d at 146; *Joseph v. Markovitz,* 27 Ariz.App. 122, 551 P.2d 571, 574–75 (1976). A "willful act" requires something more than defendant's "carry[ing] out the process to its authorized conclusion, even though with bad intentions." *Joseph,* 551 P.2d at 575 (internal quotation omitted). It is "a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself."

**1116**

*Crackel v. Allstate Insurance Co.,* 208 Ariz. 252, 92 P.3d 882, 890 (2004) (internal citations omitted). In *Joseph,* the plaintiff alleged the complaint was filed to prevent his testimony against the defendants in a malpractice action. Treating this allegation as true, the plaintiff would have had to allege an act beyond the filing of the lawsuit, such as an offer to dismiss the complaint in exchange for plaintiff's refusal to testify, to maintain a claim for abuse of process. *Id.* at 575.

■ Like Joseph, Plaintiff merely asserts that Defendant's purpose was to exhaust her financial resources in order to prevent her testimony against Mr. Tullo, YP.net's CEO in a pending criminal matter. (Compl.¶ 56.) Other than describing the Defendant's litigation activities, Plaintiff does not allege a willful act in furtherance of this purpose. While not pled in the complaint, Plaintiff has alleged that three unsuccessful contempt of court actions filed in the YP.net litigation constitute an overt act. Contempt actions constitute "a use of the process itself" as opposed to something "done in the course of negotiation." *See Green v. Uccelli,* 207 Cal.App.3d 1112, 11117, 1125, 255 Cal. Rptr. 315 (1989) (filing orders to show cause regarding contempt does not constitute a claim for abuse of process against opposing counsel). Therefore, Plaintiff has failed to state a claim for abuse of process.

**C. Wrongful Institution of Civil Proceedings (Count 3)**

■ An actionable claim for wrongful institution of civil proceedings, or malicious prosecution, requires showings "that a civil or criminal proceeding was instituted by the defendant against the plaintiff; that the suit terminated in favor of the plaintiff; that it was commenced without probable cause; and that it was motivated by malice." *Joseph,* 551 P.2d at 573. "The existence of probable cause to institute the action is a complete defense to malicious prosecution without regard to the existence of malice." *Id.* "Conclusory allegations with nothing more are insufficient to defeat [a] motion to dismiss." *McCarthy v. Mayo,* 827 F.2d 1310, 1316 (9th Cir.1987).

■ Beyond re-stating allegations in support of the claim for abuse of process (Compl.¶ 60–61), Plaintiff only alleges that, based upon available evidence, no reasonable person would have believed Defendant's claim was meritorious. (Compl.¶ 63). In addition, Plaintiff offers no facts in support of the alleged absence of probable cause. This allegation is conclusory, and therefore, Plaintiff has failed to state a claim for wrongful institution of civil proceedings.

**D. Tortious Interference with Contractual Relations and Business Expectancy (Count 7)**

■ An actionable claim for tortious interference with contractual relations and business expectancy requires a valid contractual relationship or business expectancy, the interferer's knowledge of the contractual relationship or expectancy, intentional interference inducing a breach or termination of the relationship, and resultant damage. *American Family Mutual Ins. Co. v. Zavala,* 302 F.Supp.2d 1108, 1117 (D.Ariz.2003). Additionally, the interference must be "improper" in some manner. *Id.* The Restatement addresses the impropriety of truthful statements:

There is of course no liability for interference with a contract ... on the part of one who merely gives truthful information to another. The interference in this instance is clearly not improper. This is true even though the facts are

marshaled in such a way that they speak for themselves and the person to whom the information is given immediately recognizes them as a reason for breaking his contract or refusing to deal with another. It is also true whether or not the information is requested.

Restatement (Second) of Torts § 772 cmt. b (1979)

The complaint alleges that Defendants informed Plaintiff's clients that Plaintiff was being sued by YP.net. This was a true statement, and therefore, "[t]here is of course no liability for interference with a contract . . . on the part of one who merely gives truthful information to another." *Id.* Accordingly, it is unnecessary to analyze the remaining elements of the claim. Plaintiff has thus failed to state a claim for tortious interference.

### E. Intentional Infliction of Emotional Distress (Count 8)

A cause of action for intentional infliction of emotional distress requires that "the conduct by the defendant . . . be 'extreme' and 'outrageous;'" "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct;" and severe emotional distress must result from defendant's conduct. *Johnson v. McDonald,* 197 Ariz. 155, 160, 3 P.3d 1075 (1999). The trial court determines whether the acts at issue are sufficiently outrageous to state a claim for relief. However, if reasonable minds could differ about whether the conduct is sufficiently outrageous, the issue should be decided by a jury. *Id.*

Plaintiff alleges the Lewis and Roca Defendants stalked, harassed and assaulted Ms. Thompson. Compl. ¶¶ 95–122. Specifically, Plaintiffs assert in April 2002 Defendant Paul admitted to having Ms. Thompson and her children followed.

Compl. ¶ 96. Plaintiffs also allege a Lewis and Roca attorney called Ms. Thompson's children "tar babies." Compl. ¶ 112. Additionally, Plaintiffs assert the Lewis and Roca Defendants hired individuals who attacked Ms. Thompson at a restaurant named the Phoenix City Grill. Compl. ¶ 101.

In *Linder,* supra, the Arizona Court of Appeals upheld the dismissal of the plaintiff's claims of fraud and intentional infliction of emotional distress against opposing counsel in a previous action, finding the claims not only insufficiently pleaded, but precluded by an earlier judgment. The court nevertheless went on to state that, in Arizona, case law limits claims against opposing counsel to malicious prosecution. *Linder,* 943 P.2d at 765. However, subsequent cases have limited *Linder's* holding to precluding claims against opposing counsel alleging fraud and negligence. *Cf. Giles v. Hill Lewis Marce,* 195 Ariz. 358, 988 P.2d 143, 146–47 (1999) (concluding public policy invoked in *Linder* does not exist for abuse of process claims).

Reckless disregard has been found when an employer knew an employee had been physically assaulted, subjected to "vulgar remarks," and was emotionally distraught. *Ford v. Revlon, Inc.,* 153 Ariz. 38, 734 P.2d 580, 585 (1987). Although Plaintiff's claims against Lewis & Roca do not arise in an employment context, her allegations are otherwise similar to *Ford.*

Defendants argue the allegations in the complaint, which rely only on "information and belief," are insufficient to support Plaintiffs' allegations and, even if sufficient, fail to state a claim for IIED. However, the Complaint specifies Defendant Paul told Ms. Thompson she was being followed and a Lewis & Roca lawyer used a racial slur in reference to Ms. Thompson's children. Further, Plaintiffs allege

Ms. Thompson was assaulted, which was witnessed by four individuals, whom Plaintiffs believe Defendants hired. Accordingly, the allegations appear to be based on Ms. Thompson's personal knowledge and the Court is unaware of authority to dismiss claims on a 12(b)(6) motion which are based on Plaintiffs' personal knowledge.

Alternatively, Defendants argue, taking as true the allegations, they are insufficient to support a claim for intentional infliction of emotional distress. Courts have concluded a private investigator surreptitious videotaping an individual during church services "as a matter of law ... did not rise to the level of outrage necessary to support a claim for intentional infliction of emotional distress." *Creel v. I.C.E. & Associates, Inc.,* 771 N.E.2d 1276, 1282–83 (Ind.App.2002). Furthermore, another jurisdiction has found use of a racial epithet in conjunction with other offensive behavior did not state a claim for intentional infliction of emotional distress under a standard requiring a plaintiff to plead she was subjected to "relentless physical and verbal harassment ... to state a claim for intentional infliction of emotional distress." *Vamper v. United Parcel Service, Inc.,* 14 F.Supp.2d 1301, 1306–07 (S.D.Fla.1998) (dismissing Plaintiff's IIED claim where the plaintiff alleged that UPS fabricated a reckless driving charge in an attempt to terminate him; told a false story about him to another employee; and referred to plaintiff as a "nigger.")

■ However, Plaintiff's claims are distinguishable from an isolated incident of videotaping. Furthermore, Arizona does not require proof of relentless physical and verbal harassment to state a claim for intentional infliction of emotional distress. Here, Plaintiff alleges Defendants repeatedly followed and "stalked" Ms. Thompson and Ms. Thompson's children, used a racial slur in reference to Ms.

Thompson's children, trespassed on Ms. Thompson's property, terrorized Ms. Thompson's children, and hired individuals to assault Ms. Thompson. The Court finds that reasonable minds could differ about whether the alleged conduct is sufficiently outrageous, and therefore, dismissal is not appropriate.

**F. Negligent Infliction of Emotional Distress (Count 9)**

■ A cause of action for negligent infliction of emotional distress requires that the "shock or mental anguish is accompanied by or manifested as a physical injury." *Gau v. Smitty's Super Valu, Inc.,* 183 Ariz. 107, 901 P.2d 455, 457 (1995). Teeth grinding and bed wetting have been held sufficient physical injuries to state a cause of action, *Quinn v. Turner,* 155 Ariz. 225, 745 P.2d 972, 973 (1987), whereas transitory weeping and insomnia, standing alone, cannot sustain a cause of action for negligence. *Gau,* 901 P.2d at 457.

■ The complaint does not allege physical injury resulting from the emotional distress Defendant's caused Plaintiff. Rather, this emotional distress was accompanied by phenomena such as anxiety, fear concerning and overwhelming feelings, insomnia, and weight loss. Compl. ¶¶ 129–30. While Plaintiffs allege Matthew Thompson was rushed to the emergency room due to his anxiety, Plaintiff fails to allege what manifested physical injury precipitated the hospital visit, the result or duration of the hospital visit. Compl. ¶ 103. Feelings, emotions, and insomnia are insufficient to state a cause of action for negligence. While weight loss is arguably a physical injury, it is likely transitory and cannot sustain this cause of action. *Id.*

**G. Conclusion**

Plaintiffs cannot state a cause of action against opposing counsel for viola-

tion of section 10(b) of the of the Securities and Exchange Act, fraudulent misrepresentation, negligent misrepresentation, and third party professional negligence because attorneys do not owe a duty to opposing parties, Plaintiffs were not the intended beneficiaries of Defendants' services, and as a matter of law Ms. Thompson had no right to rely on statements made by opposing counsel. Secondly, Plaintiffs claim for tortious interference fails because there is no liability for interference with a contract where a party gives truthful information to another. These claims all fail as a matter of law and will be dismissed with prejudice as any amendment would be futile. *See* FED. R. CIV. PRO. 15.

Additionally, other than asserting Defendants prosecuted a baseless lawsuit, Plaintiffs do not allege a willful act in furtherance of this purpose, and consequently, Plaintiffs have failed to state a claim for abuse of process. Plaintiffs claim for wrongful institution of civil proceedings is predicated solely on conclusory allegations regarding the alleged absence of probable cause, and therefore, will be dismissed. Furthermore, Plaintiffs fail to adequately plead a physical injury in connection with their claim for negligent infliction of emotional distress. However, because the pleading deficiencies in Plaintiffs' abuse of process, wrongful institution of civil proceedings, and negligent infliction of emotional distress could possibly be cured on amendment, these claims will be dismissed without prejudice. *See* FED. R. CIV. PRO. 15.

**IV. The Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims in the interests of judicial economy, fairness, and comity.**

The one claim remaining in this case, after this Order, is Plaintiff's state-law claim for intentional infliction of emotional distress. The Court exercised jurisdiction over Plaintiff's state-law claims as supplemental to its original jurisdiction over the federal causes of action pursuant to 28 U.S.C. § 1367(a). However pursuant to 28 U.S.C. § 1367(c), the Court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—. . . (3) the district court has dismissed with prejudice all claims over which it has original jurisdiction. . . ." 28 U.S.C. § 1367(c). By this Order, the Court has dismissed all claims over which it has original jurisdiction.

■ The Supreme Court has stated, and the Ninth Circuit has often repeated, that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). While discretion to decline to exercise supplemental jurisdiction over state-law claims is triggered by the presence of one of the conditions in section 1367(c), it is, however, "informed by the values of economy, convenience, fairness, and comity." *See Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir.1997).

After reviewing the entire record in this matter, this Court has determined that the interests of judicial economy, convenience, fairness, and comity, on balance, favor declining to exercise supplemental jurisdiction over the remaining state-law claims pursuant to this Court's discretion under 28 U.S.C. § 1367(c).

**Accordingly,**

**IT IS HEREBY ORDERED** Defendants' Motion to Dismiss is **GRANTED IN PART and DENIED IN PART.**

(Dkt.# 11). The Motion to Dismiss is granted as to Count 1, violation of section 10(b) of the Securities and Exchange Act; Count 4, Fraudulent Misrepresentation; Count 5, Negligent Misrepresentation; Count 6 Third Party Professional Negligence, and Count 7, Tortious Interference with Contractual Relations, which are dismissed **WITH PREJUDICE**. The Motion to Dismiss is granted as to Count 2, Abuse of Process; Count 3, Wrongful Institution of Civil Proceedings; and Count 9, Negligent Infliction of Emotional Distress, which are dismissed **WITHOUT PREJUDICE**. The Motion to Dismiss is denied as to Count 8, Intentional Infliction of Emotional Distress.