**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

PAMELA THOMPSON, an individual
as guardian of Gabriella, Matthew,
Marcus and Michael Thompson
and The Thompson Group P.C., an
Arizona corporation,
            *Plaintiff-Appellant,*

            v.

GEORGE PAUL; KAREN PAUL; TOM
MORGAN; SCOTT DEWALD;
DEBORAH JAMIESON; LEWIS AND
ROCA LLP, an Arizona Limited
Liability Partner; CAPITOL
DETECTIVE AGENCY, INC.,
            *Defendants-Appellees.*

No. 06-15515

D.C. No.
CV-05-00990-MHM

OPINION

Appeal from the United States District Court
for the District of Arizona
Mary H. Murguia, Distict Judge, Presiding

Argued and Submitted
January 17, 2008—San Francisco, California

Filed October 27, 2008

Before: William A. Fletcher and Carlos T. Bea,
Circuit Judges, and Jeffrey T. Miller,* District Judge.

Opinion by Judge William A. Fletcher

*The Honorable Jeffrey T. Miller, United States District Judge for the Southern District of California, sitting by designation.

14955

## COUNSEL

William M. Balin, Balin & Kotler, San Francisco, California, James LaGanke, Phoenix, Arizona, and Charles Weller, La Jolla, California, for the appellant.

Hal Michael Clyde, Paul F. Eckstein, and Todd Kerr, Perkins Coie Brown & Bain, Phoenix, Arizona, for appellee Lewis and Roca.

David S. Rosenthal, Rosenthal Law Office, Phoenix, Arizona, and Gregory Alan Rosenthal, Arboleda Brechner, Phoenix, Arizona, for appellee Capitol Detective Agency.

## OPINION

W. FLETCHER, Circuit Judge:

Plaintiff Pamela Thompson and her four children (collectively "Thompson") sued defendants for alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, and various provisions of state law. The district court dismissed Thompson's Section 10(b) claim with prejudice under Federal Rule of Civil Procedure 12(b)(6). After the district court had entered final judgment of dismissal of all of her claims, including her state-law claims, Thompson asked the district court to certify a question of state law to the Arizona Supreme Court. The district court denied the request.

Thompson contends that the district court erred by applying state law rather than federal law in dismissing her claim under Section 10(b). We agree with this contention. We reverse and hold that under the federal law applicable to her Section 10(b) claim Thompson has stated a claim upon which relief can be granted. Thompson also contends that the district court erred in denying her request to certify the question to the Arizona Supreme Court. We disagree with this contention. We affirm the district court on this issue.

### I.  Factual Allegations

The following narrative is taken from the allegations in Thompson's complaint. Because the district court dismissed the complaint under Rule 12(b)(6), we assume that all of the allegations in the complaint are true.

From January 2001 through May 2002, Thompson worked as the Chief Financial Officer ("CFO") of YP.Net, a publicly traded company. Thompson resigned from YP.Net in May 2002 because of "highly questionable accounting and auditing practices at the company. More specifically, . . . [she]

resigned because of the refusal of YP.Net officers and directors to make proper disclosures to the Securities and Exchange Commission." Compl. ¶ 17. When Thompson resigned, "she forwarded her resignation from YP.Net to the Securities and Exchange Commission Enforcement Division because of her concerns of illegal conduct at YP.Net." *Id.* ¶ 18.

Immediately after Thompson resigned as CFO in May 2002, YP.Net filed a civil suit against her. The suit was filed in an attempt to protect the Chief Executive Officer ("CEO") of YP.Net, Angelo Tullo, who was then subject to criminal investigation by several federal agencies. *Id.* ¶ 34. Thompson filed counterclaims in September 2003. YP.Net and Tullo were both represented by the Arizona law firm Lewis and Roca ("L&R").

In about June 2000, while representing an alter ego of YP.Net in an attempt to purchase assets of a company in bankruptcy, attorneys at L&R became aware "that Tullo was a target of a criminal investigation with several federal law enforcement agencies." *Id.* ¶ 21. Tullo's "criminal matters were never disclosed in any Securities and Exchange Commission filings." *Id.* ¶ 24. During the pendency of the civil litigation between Thompson and YP.Net, from May 2002 through April 2004, attorneys at L&R "vehemently denied any and all knowledge of a criminal investigation targeted at Angelo Tullo." *Id.* ¶ 35. *See id.* ¶ 39.

Thompson and YP.Net entered into settlement negotiations to resolve YP.Net's civil suit against Thompson. On April 22, 2004, the parties "entered into a settlement memorandum." *Id.* ¶ 37. Under the settlement, Thompson was to receive a substantial amount of common stock in YP.Net. In part, the agreement was "based upon" the "false representation" by L&R attorneys that "[t]here in fact was no criminal investigation targeted at the CEO of YP.Net, Angelo Tullo." *Id.* Yet on April 22, 2004, L&R attorneys "knew that there was a crimi-

nal investigation targeting Tullo." *Id.* ¶ 39. On that day, Thompson "made it clear to all parties, including the LEWIS AND ROCA DEFENDANTS that she intended to sell as much of her stock as soon as possible." *Id.* ¶ 40. According to the memorandum, the settlement was to be executed on April 26, 2004.

"Moments before the final settlement documents in the YP [civil] litigation could be executed," the L&R attorneys "withdrew from the YP litigation due to an undisclosed conflict that they had purportedly just discovered." *Id.* ¶ 41. Because of the last-minute withdrawal of the L&R attorneys, YP.Net was required to obtain new counsel and to postpone the execution of the settlement. A settlement was "ultimately finalized" on May 24, 2004, with the assistance of new YP.Net counsel. Three days later, on May 27, Tullo was "indicted on 29 counts of fraud, conspiracy, money laundering, and orchestrating a ponzi scheme." *Id.* ¶ 43. As a result of Tullo's indictment, the value of the YP.Net common stock that Thompson received under the settlement "plummeted in value." *Id.* ¶ 44.

The L&R attorneys made their false representations that Tullo was not subject to criminal investigation "with knowledge of their falsity." *Id.* ¶ 50. However, Thompson "did not know of the falsity of the communications and representations" by the L&R attorneys. *Id.* ¶ 51. "[A]s a result, [she] relied upon the communications and representations of the [L&R attorneys] and thought they had been truthful." *Id.* If the stock Thompson received under the settlement had not lost value as a result of Tullo's indictment, it "could have been valued at more than one million dollars." *Id.* ¶ 49.

## II.    Proceedings in the District Court

In April 2005, Thompson and her four children filed suit in federal district court against the law firm of Lewis and Roca, three individual partners in Lewis and Roca, and two spouses of those partners (collectively "the L&R defendants"), and

against the Capitol Detective Agency. Thompson brought one federal claim under Section 10(b) and Rule 10b-5 ("the Section 10(b) claim"), and numerous claims under state law. The district court dismissed the Section 10(b) claim and several of the state-law claims with prejudice under Federal Rule of Civil Procedure 12(b)(6). The district court dismissed several other state-law claims without prejudice under Rule 12(b)(6). Finally, the district court dismissed the last remaining state law claim under 28 U.S.C. § 1367(c). *Thompson v. Paul*, 402 F. Supp. 2d 1110, 1119 (D. Ariz. 2005). After the district court had entered an order dismissing all of her claims but before entry of final judgment, Thompson moved for reconsideration asking the district court to certify a question of state law to the Arizona Supreme Court. The district court denied the motion.

Thompson raises two questions on appeal. These questions are relevant only to possible liability of the L&R defendants. No question relevant to liability of defendant Capitol Detective Agency is before us on appeal. First, Thompson contends that the district court erred in dismissing her claim under Section 10(b) because it incorrectly relied on state rather than federal law. Second, Thompson contends that the district court erred in denying her request to certify the question of state law. We discuss her contentions in turn.

### III.   Standard of Review

We review de novo a dismissal under Rule 12(b)(6), and we can affirm on any ground supported by the record. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 403 F.3d 1050, 1055, 1058 (9th Cir. 2005). We take all well pleaded allegations of material fact as true and construed in Thompson's favor. *Maduka v. Sunrise Hosp.*, 375 F.3d 909, 911 (9th Cir. 2004). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2508 (2007) (describing the Private Securities Litigation Reform Act's ("PSLRA") heightened

pleading requirements for Section 10(b) misrepresentation claims, citing 15 U.S.C. § 78u-4(b)(1), (2)).

We review for abuse of discretion the district court's denial of a request to certify a question to a state supreme court. *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1087 (9th Cir. 2003).

## IV. Discussion

### A. Thompson's Section 10(b) Claim

#### 1. Attorney Liability under Section 10(b)

In dismissing with prejudice Thompson's claim under Section 10(b), as well as her state-law claims for fraudulent misrepresentation, negligent misrepresentation and third-party professional negligence, the district court wrote:

> A cause of action against opposing counsel for statements made during litigation is strictly limited to actions alleging malicious prosecution, also known as wrongful institution of civil proceedings. *Linder v. Brown & Herrick*, 189 Ariz. 398, 943 P.2d 758, 766 (1997) (dismissing claims of fraud and intentional infliction of emotional distress against opposing counsel for failure to state a claim). An attorney's duty to a nonclient arises only if the nonclient is an "intended beneficiary" of the attorney's services. *Wetherill v. Basham*, 197 Ariz. 198, 3 P.3d 1118, 1128 (2000). "An adverse party is not an intended beneficiary of the adverse counsel's client." *Lewis v. Swenson*, 126 Ariz. 5561, 617 P.2d 69, 72 (1980) (internal quotation omitted). Imposition of a duty to an individual, other than an "intended beneficiary" would offend public policy by "plac[ing] an attorney in a position where his own interests would conflict directly with his client's interests." *Id.* Addi-

tionally, "as a matter of law and common sense, [Ms. Thompson] had no right to rely on statements made by the attorneys opposing [her]." *Linder*, 943 P.2d at 765.

A section 10(b) action requires justifiable reliance on alleged misrepresentations. *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025 (9th Cir. 1992). The securities laws create liability for misrepresentation only in the event of a "substantial likelihood that the misrepresentation significantly altered the total mix of information that the investor possesse[d]." *Id.* at 1030. "If the investor already possesses information sufficient to call the representations into question, he cannot claim later that he relied on or was deceived by the lie." *Id.* As noted above, Ms. Thompson ["]had no right to rely on statements made by the attorneys opposing [her]." *Linder*, 943 P.2d at 765.

402 F. Supp. 2d at 1115 (all brackets, except the second-to-last, in the original).

It is apparent from this passage that the district court dismissed Thompson's Section 10(b) claim because, in the court's view, she had no right under Arizona law to rely on opposing counsel's statements, even though those statements were made "in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. The district court's reliance on state law in deciding the Section 10(b) claim may be seen clearly in the last sentence in the second quoted paragraph, the only paragraph specifically directed to Section 10(b) liability. Relying on *Linder*, a state-law decision of the Arizona Supreme Court, the district court wrote, "Ms. Thompson [']had no right to rely on statements made by the attorneys opposing [her].' " For the reasons that follow, we hold that the district court erred in relying on Arizona law in deciding whether Thompson had a right under Section 10(b) to rely on

the statements of the L&R attorneys. We hold, further, that Thompson has stated a claim for relief under Rule 12(b)(6).

Before we proceed with the substance of our analysis, we pause to say that the district court was not well served by the attorneys who appeared before it. The attorneys representing the L&R defendants argued in the district court that the standard governing alleged misrepresentations by attorneys in Section 10(b) cases is a state-law standard, and that Arizona law does not provide for attorney liability to third parties. The attorneys representing Thompson spent most of their brief in the district court, and all of their oral argument in that court, contending that Arizona law does provide for attorney liability to third parties. Thompson's attorneys argued in their district court brief that the L&R attorneys were liable under Section 10(b) under federal law, but the only cases they cited were *Chiarella v. United States*, 445 U.S. 222 (1980), generally dealing with liability under Section 10(b), and *Paracor Finance, Inc. v. G.E. Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996), setting forth the factors for determining whether a person has a duty under Section 10(b) to disclose information. Neither *Chiarella* nor *Paracor* discusses the circumstances under which attorneys can be liable under Section 10(b).

Sometime after losing in the district court and before writing their appellate brief, Thompson's attorneys discovered a number of cases that deal directly with attorney liability under Section 10(b). If they had cited to the district court the cases they now cite to us, that court may well have (indeed, likely would have) reached the correct conclusion in this case. Thus, it is apparent to us that by erroneously framing the question of attorney liability under Section 10(b) as one basically controlled by state law and then failing to cite the federal cases on point, the parties invited the district court to engage in its state law analysis. Because, however, Thompson's attorneys briefly argued that the liability of the L&R attorneys should be determined under federal law, we conclude that Thompson has not waived on appeal the argument that federal law pro-

vides the proper standard by which to determine attorney liability. Indeed, the L&R defendants do not contend that the argument has been waived in this court.

**[1]** Section 10(b) makes it "unlawful . . . [t]o use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b-5 implements Section 10(b). The rule "encompasses only conduct already prohibited by § 10(b)." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 128 S. Ct. 761, 768 (2008). Under Rule 10b-5, it is "unlawful"

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. To state a claim under Section 10(b), a plaintiff "must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge*, 128 S. Ct. at 768.

**[2]** "The principle is well settled that federal law, rather than state law, governs the construction of all aspects of Rule

10b-5[.]" *Huddleston v. Herman & MacLean*, 640 F.2d 534, 557 n.40 (5th Cir. 1981) (citations and internal quotations omitted), *rev'd in part on other grounds*, 459 U.S. 375 (1983). Section 10(b) is not an exception to the general rule that "[a] claim which arises under a federal statute and implicates federal policy is appropriately decided under federal law." *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1489 (9th Cir. 1985). *See also In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1055 (3rd Cir. 1993) (similar). "Federal statutory rights could be easily defeated if state law could be used to control the incidents of those rights and the defenses to them." *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1340 (9th Cir. 1992). *See also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (noting that a Section 10(b) "private damages action . . . resembles, but is not identical to, common-law tort actions for deceit and misrepresentation"); *Huddleston*, 459 U.S. at 388 (similar); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 744-45 (1975) (similar).

**[3]** The Supreme Court has stated in general terms that an attorney may be liable under Section 10(b). "Any person or entity, *including a lawyer*, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5, assuming *all* of the requirements for primary liability under Rule 10b-5 are met." *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 191 (1994) (first emphasis added). *See also United States v. O'Hagan*, 521 U.S. 642, 664 (1997) (quoting *Central Bank of Denver*). The precise question presented in this case is whether an attorney can be liable under Section 10(b) for statements made to third parties—that is, to persons or entities other than the attorney's clients. A number of circuit courts have answered yes to that question.

In *Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263 (6th Cir. 1998) (en banc), attorney Barnhart represented Medical Designs, Inc. ("MDI") in connection with the sale of MDI

debt and stock. Barnhart assured Rubin, one of the prospective investors, that one of MDI's lenders, Star Bank, would increase the amount of funding for MDI. Barnhart also assured Weiss, an attorney for Rubin, that Star Bank would have no problem with the contemplated investment by Rubin. However, in truth, MDI was already in default on a loan from Star Bank, and the contemplated investment in MDI would constitute further default. Barnhart knew this, but told Weiss that everything between MDI and Star Bank was "fine," and discouraged him from contacting Star Bank.

**[4]** The Sixth Circuit, sitting en banc, held that Barnhart could be held liable under Section 10(b), even though he had been representing the seller, and even though his misrepresentations had been made to a non-client prospective investor. The court wrote:

> One fundamental question posed by this case is whether enterprising attorneys may gratuitously tout their clients' securities unconstrained by the general duty imposed by the securities laws not to make materially misleading statements in connection with the sale of such securities.
>
> . . .
>
> There is nothing special about Barnhart's status as an attorney that negates his Rule 10b-5 duty to disclose, a duty that ordinarily would devolve under Rule 10b-5 upon a third party under these circumstances. Although under Rule 10b-5(b) and its predecessor, "only those individuals who had an affirmative obligation to reveal what was allegedly omitted can be held liable as primary participants in the alleged deception[, a] duty to disclose naturally devolves on those who have direct contacts with 'the other side.' " *SEC v. Coffey*, 493 F.2d 1304, 1315 (6th Cir. 1974). "Direct contacts may take many

forms. . . . ” *Id.* at 1315. n.24. . . . [T]he conversations between Barnhart and the plaintiffs clearly were instances of “direct contacts” sufficient to give rise to the duty to disclose.

. . .

In sum, while an attorney representing the seller in a securities transaction may not always be under an independent duty to volunteer information about the financial condition of his client, he assumes the duty to provide complete and nonmisleading information with respect to subjects on which he undertakes to speak. . . . When Barnhart consented to speak to Rubin and Weiss concerning the status of MDI’s relationship with Star Bank, and about Star Bank’s likely reaction to a substantial loan from Rubin and [another investor], he assumed a duty to speak fully and truthfully on those subjects.

*Id.* at 266-68 (first set of brackets in original).

**[5]** In *Trust Company of Louisiana v. N.N.P., Inc.*, 104 F.3d 1478 (5th Cir. 1997), an attorney representing a seller of debt made representations of a material fact in a letter sent to a prospective purchaser of the debt. The Fifth Circuit held that the attorney was liable under Section 10(b) because he “knowingly and with scienter made material misstatements in connection with the purchase of a security.” *Id.* at 1491.

**[6]** In *Kline v. First Western Government Securities*, 24 F.3d 480 (3d Cir. 1994), a Chicago law firm prepared opinion letters describing the tax consequences of securities that its client was offering for sale. Purchasers of the securities brought suit under Section 10(b) against the firm that had prepared the letters. The Third Circuit noted that the firm prepared the letters with knowledge that they would be presented to potential purchasers of the securities. The court held that

the law firm could be held liable under Section 10(b) for material misrepresentations and omission in the letters: "We conclude . . . that attorneys may be liable for both misrepresentations and omissions where the result of either is to render an opinion letter materially inaccurate or incomplete." *Id.* at 485-86.

**[7]** Finally, in *Ackerman v. Schwartz*, 947 F.2d 841 (7th Cir. 1991), Schwartz, an attorney representing sellers of fraudulent tax shelters, wrote an opinion letter stating that purchasers of the shelters were entitled to federal tax credits and deductions. The Seventh Circuit held that because Schwartz knew that his letter would be used to sell the shelters, he could be held liable under Section 10(b) for material misstatements contained in the letter. "Although the lack of duty to investors means that Schwartz had no obligation to blow the whistle, . . . Schwartz cannot evade responsibility to the extent he permitted the promoters to release his letter." *Id.* at 848.

**[8]** The rule that emerges from *Rubin*, *Trust Company of Louisiana*, *Kline*, and *Ackerman* is clear. An attorney who undertakes to make representations to prospective purchasers of securities is under an obligation, imposed by Section 10(b), to tell the truth about those securities. That he or she may have an attorney-client relationship with the seller of the securities is irrelevant under Section 10(b). We therefore conclude, in accordance with the rule articulated in our sister circuits, that the L&R defendants are not protected from liability under Rule 10(b) by the fact that they were representing YP.Net and CEO Tullo at the time they made their alleged misrepresentation of fact to Thompson.

**[9]** We hold that Thompson has alleged sufficient facts in her complaint to survive a Rule 12(b)(6) motion to dismiss her Section 10(b) claim against the L&R defendants. Thompson alleged sufficient facts in her complaint to establish economic loss and loss causation as well. *See Stoneridge*, 128

S. Ct. at 768. Because the district court concluded, incorrectly, that Thompson's Section 10(b) claim had to be dismissed based on Arizona law, the court did not reach the question of whether the complaint satisfies the heightened pleading requirements of the PSLRA. *See* 15 U.S.C. § 78u-4(b)(1)-(2). In the interest of judicial efficiency, we decide that question now rather than remand to the district court. Without burdening the reader with a detailed recounting of the complaint beyond that provided, *supra*, we simply say that Thompson's complaint, pleading a violation of Section 10(b), satisfies the heightened standard of the PSLRA. *See Tellabs*, 127 S. Ct. at 2509-11.

## 2.   Alternate Ground

The L&R defendants urge an alternate ground for affirming the district court's dismissal of Thompson's Section 10(b) claim. Even assuming that Thompson's complaint states a claim for a violation of Section 10(b), they contend in their brief to us that "Thompson's appeal does not challenge the district court's conclusion that Thompson knew of the criminal investigation at the time of defendant George Paul's [one of the L&R attorney's] alleged statement [at the April 22 settlement meeting] that there was no such investigation." The L&R defendants characterize the district court's "conclusion" as a finding, and contend that "Thompson's failure to appeal from [that] finding[ ] means that the district court's dismissal of [that] claim[ ] must be affirmed." They write, "[t]he district court properly concluded, expressly relying on *Atari* [*Corp. v. Ernst & Whinney*, 981 F.2d 1025 (9th Cir. 1992)], that Thompson could not have justifiably relied on a statement that she clearly knew was false."

**[10]** The premise of the L&R defendants' argument is that the district court made a factual finding that on April 22, 2004, Thompson knew that the L&R attorneys' representation that Tullo was not being criminally investigated was false. Because Thompson knew the representation of the L&R attor-

neys was false, the argument goes, she could not reasonably have relied on them. This argument is frivolous.

First, the L&R defendants have misread the district court's order. For the convenience of the reader, we reproduce the relevant paragraph, already quoted above. That paragraph is as follows:

> A section 10(b) action requires justifiable reliance on alleged misrepresentations. *Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025 (9th Cir. 1992). The securities laws create liability for misrepresentation only in the event of a "substantial likelihood that the misrepresentation significantly altered the total mix of information that the investor possesse[d]." *Id.* at 1030. "If the investor already possesses information sufficient to call the representations into question, he cannot claim later that he relied on or was deceived by the lie." *Id.* As noted above, Ms. Thompson ["]had no right to rely on statements made by the attorneys opposing [her]." *Linder*, 943 P.2d at 765.

*Thompson*, 402 F. Supp. 2d at 1115. In this paragraph, the district court notes correctly that a Section 10(b) plaintiff must show "justifiable reliance" on alleged misrepresentations. The court then quotes statements from *Atari* to the effect that an investor who "already possesses information sufficient to call the representations into question" cannot succeed in a claim under Section 10(b). However, the court after quoting *Atari*, makes no factual finding that Thompson possessed information that Tullo was being investigated criminally. Instead, the district court relies upon the Arizona Supreme Court's decision in *Linder* by concluding that, as a matter of law, Thompson "had no right to rely on statements by the attorneys opposing her."

Second, even if it were possible (which we think it is not) to read the district court's order as the L&R defendants sug-

gest, the district court could not have made such a factual finding. The district court was ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim. All properly pleaded allegations in Thompson's complaint had to be taken as true. Thompson specifically alleged in her complaint that she "did not know of the falsity of the communications and representations" by the L&R attorneys. Compl. ¶ 51. "[A]s a result, [she] relied upon the communications and representations of the [L&R attorneys] and thought they had been truthful." *Id.*

The question is not whether Thompson knew that Tullo had been criminally investigated at some time in the past. The question, rather, is whether he was being investigated, or still being investigated, on April 22, 2004. It may turn out, on summary judgment or at trial, that the L&R defendants will be able to show that on April 22 Thompson knew that Tullo was being, or still being, criminally investigated. But the district court had no way of knowing this in the context of a Rule 12(b)(6) motion, and its order does not purport to make any factual finding to that effect. We therefore conclude that the L&R defendants' alternate argument fails.

## B. Certification to the Arizona Supreme Court

After the district court had entered its order dismissing all of Thompson's claims, but before entry of final judgment, Thompson moved for reconsideration of its dismissals, asking the district court to certify the following question to the Arizona Supreme Court: "Whether a lawyer is prohibited from making a material misrepresentation to the opposing party during settlement negotiations, and whether the opposing party has the right to rely on that representation." Thompson hoped that the answer of the Arizona Supreme Court would lead the district court to reverse its dismissal of her Section 10(b) claim and its dismissal of her state-law misrepresentation claims.

The district court denied Thompson's motion on the ground that she had unduly delayed asking for certification. Because the L&R defendants' liability under Section 10(b) is governed by federal rather than state law, Thompson's appeal of the district court's refusal to certify is moot with respect to that claim. However, it is not moot with respect to her state-law misrepresentation claims.

[11] There is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision. A party should not be allowed "a second chance at victory" through certification by the appeals court after an adverse district court ruling. *In re Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984). *See also Enfield v. A.B. Chance Co.*, 228 F.3d 1245, 1255 (10th Cir. 2000) ("Although the issues raised by the City are novel and somewhat difficult, the City did not seek certification until after it received an adverse ruling from the district court. That fact alone persuades us that certification is inappropriate."); *Perkins v. Clark Equip. Co., Melrose Div.*, 823 F.2d 207, 209-10 (8th Cir. 1987) (noting that request for certification was not made "until after the motion for summary judgment had been decided against them," and stating that this "practice . . . should be discouraged. Otherwise, the initial federal court decision will be nothing but a gamble with certification sought only after an adverse ruling.").

[12] Certification of open questions of state law to the state supreme court can "in the long run save time, energy, and resources and helps build a cooperative judicial federalism," but "[i]ts use in a given case rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). *See also Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1063 (9th Cir. 1997). We hold that the district court did not abuse its discretion in denying Thompson's motion for reconsideration asking the district court to certify the question of state law to the Arizona Supreme Court. We therefore affirm the district court's decision on this issue.

## Conclusion

We reverse the district court's dismissal under Rule 12(b)(6) of Thompson's claim under Section 10(b). We hold that Thompson's complaint states a claim upon which relief can be granted under Section 10(b). We affirm the district court's denial of Thompson's motion to reconsider and to certify a question of state law to the Arizona Supreme Court. No issue affecting defendant Capitol Detective Agency was appealed. Costs on appeal are to be divided equally between Thompson and the L&R defendants.

REVERSED and REMANDED in part. AFFIRMED in part.