*524 MEMORANDUM *
The district court granted summary-judgment for North American Capacity Insurance Company (“North American”) and Intermountain Claims (“Intermountain”), concluding that Gary Butler’s claims are barred under Idaho law, and that Idaho law applies because Idaho has the most significant relationship with the parties and the underlying occurrence.[1] Butler appeals this determination and, in the alternative, requests certification of the choice-of-law issue to the Montana Supreme Court. We have jurisdiction under 28 U.S.C. § 1291, and we review a decision concerning choice of law de novo, Mortensen v. Bresnan Commc’ns, LLC, 722 F.3d 1151, 1157 (9th Cir. 2013). For the reasons below, we affirm the grant of summary judgment and deny Butler’s request.
“When sitting in diversity, we apply the choice-of-law rules of the forum state.” Coneff v. AT & T Corp., 673 F.3d 1155, 1161 (9th Cir. 2012). We therefore apply the most significant relationship analysis described in the Restatement (Second) of Conflict of Laws (1971) (the “Restatement”). See Phillips v. Gen. Motors Corp., 298 Mont. 438, 995 P.2d 1002, 1007 (2000). Three sections of the Restatement are implicated in this case: sections 148(2), 145(2), and 6(2).
We conclude that the section 148(2) contacts, which apply to cases involving claims of fraud and misrepresentation, are evenly balanced. On the one hand, contacts (a) and (d) weigh in favor of Montana law. The district court properly concluded that contact (a) favors Montana law because Butler’s reliance took place in Montana. We also conclude that contact (d) slightly favors Montana law because Butler is a Montana resident, and we give more weight to the residence or domicil of the plaintiff under this contact. See Restatement § 148 cmt. i. On the other hand, contact (b) favors Idaho law because the four representations were first received in Idaho,[2] see id. cmt. g,[3] as does contact (c) because the representations were all made from Idaho, see id. cmt. h. Contact (e) does *525 not apply in this case because the parties’ dispute does not involve a “tangible thing;”[4] Finally, to the extent that contact (f) applies, we conclude that it favors neither state because, under the terms of the settlement agreement, Butler was to refrain from filing suit anywhere—not only in Montana.[5] Giving due consideration to the relative importance of each contact, we conclude that the section 148(2) contacts are evenly balanced.
Next, we consider the general tort contacts described in section 145(2). This section adds one additional contact to those discussed under section 148(2), and that contact is the center of the relationship. Restatement § 145(2)(d). We conclude that the relationship between Butler, North American, and Intermountain was centered in Idaho. Butler originally bought the cargo net in Idaho, he was injured in Idaho, and he later returned to Idaho to confront the manager of the Idaho store. Although these underlying events did not involve North American and- Intermoun-tain at the time, they eventually brought the parties together in this suit. The Idaho store owner contacted North American, which contacted Intermountain, which assigned insurance adjuster Scott Hoffman, who arranged a meeting with Butler at his office in Lewiston, Idaho. Because the other section 148(2) contacts are evenly balanced, we conclude that the center of the relationship tips the scale in favor of Idaho law in this case.
Finally, we consider section 6(2), which describes general principles potentially applicable in any choice-of-law analysis under the Restatement. As was the case in Phillips, we conclude that only (b) and (c) are applicable here. See 995 P.2d at 1009. According to these principles, we consider both “the relevant policies of the forum state [and] the relevant policies of other interested states and the relative interests of those states.” Restatement § 6(b)-(c). In this case, Montana and Idaho have different policies—most clearly demonstrated by the fact that Butler has a claim under Montana law, but not under Idaho law. Moreover, each state has an interest in applying its own law because (1) Butler is a Montana resident, and Montana has established a strong consumer protection policy in order to protect its own residents; and (2) Intermountain is registered and based in Idaho, and Idaho has an interest in. protecting its insurance companies and fostering business. See Cox v. Dep’t of Ins., 121 Idaho 143, 823 P.2d 177, 180 (Ct. App. 1991). Finally, this is not the hypothetical case described in Phillips where “all of the relevant contacts are in [Montana] except the location of the manufacturer.” 995 P.2d at 1012. Butler has independent ties to the state of Idaho, Intermountain’s principle place of business is in Idaho, and Idaho is the center of the parties’ relationship. Since both Montana and Idaho have a direct and legitimate interest in applying their law, we conclude that the section 6(2) principles are neutral.
*526 Our dissenting colleague argues that the district court erred by refusing to consider the “justified expectations” of the parties under section (6)(2)(d). We disagree. The Restatement explains that the protection of justified expectations “is of lesser importance in the field of torts” because tort injuries are typically unintentional, and because “a number of policies [applicable in tort cases], such as the deterrence of tor-tious conduct and the provision of compensation for the injured victim ... are likely to point in different directions in situations where the important elements of an occurrence are divided among two or more states.” Restatement § 145 cmt. b. This is precisely what has occurred in this ease: The representations were made in Idaho, and Idaho’s corporate protection policy points to Idaho law, but the representations were relied upon in Montana, and Montana’s consumer protection policy points to Montana law.
To the extent that the parties did give advance thought to the legal consequences of their negotiations, they had the ability to include a choice-of-law provision in their settlement contract. See Restatement § 6 cmt. g. But when the parties do not specify that the law of a particular state will govern their relationship, “tort cases generally do not involve justified expectations.” Phillips, 995 P.2d at 1013. For this reason, North American and Intermountain had no justified expectation that Idaho law would apply, and Butler had no justified expectation that Montana law would apply. Rather, the only justified expectation in this case is that the law of the state with the most significant relationship to the parties and the underlying occurrence applies. We agree with the district court and conclude that state is Idaho.
We also conclude that the choice-of-law issue is not suitable for certification because there is a controlling decision instructing courts to apply the Restatement. See Mont. R. App. P. 15(3)(b); Phillips, 995 P.2d at 1007. The mere fact that this case involves section 148, as opposed to a more familiar section, is insufficient to overcome the presumption against certifying a question after a federal district court has issued a decision. See Thompson v. Paul, 547 F.3d 1055, 1065 (9th Cir. 2008). We therefore deny Butler’s request for certification.
The parties shall bear their own costs of appeal.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3,

. The parties are familiar with the facts of this case, and we do not repeat them here except as necessary to our disposition.

. Butler suggests, and the dissent agrees, that the most important representation was that $50,000 was a fair settlement offer. We disagree. When asked how Hoffman misrepresented himself, Butler did not mention the final $50,000 offer. Instead, Butler testified that four earlier statements "stuck in filis] craw,” including that (1) Hoffman was a “neutral party,” (2) Butler would likely receive a lot less than $250,000 for his injury, (3) pursuing a claim would tie Butler up in foreign courts, and (4) Butler misused the cargo net, That Hoffman later made due on his promise that Butler would receive a lot less than $250,000 does not change our conclusion that most of the representations were received in Idaho, and a lesser portion, some duplicative of earlier statements received in Idaho, were received over the phone in Montana. See id. cmt. h.

.The dissent correctly points out that the place where a plaintiff first receives representations "is not so important a contact as is the place where the plaintiff acted in reliance on the defendant's representations.” Id. cmt. g. However, no single contact is determinative under section 148(2)—including the place of reliance. In this case, the place of reliance must be weighed against other important contacts including "[t]he place where the defendant made his false representations ... [which] is as important a contact in the selection of the law governing actions for fraud and misrepresentation as is the place of the defendant's conduct in the case of injuries to persons or tangible things,” id. cmt. c, and the place where the plaintiff first received the representations, which is as important as the place where the representations were first made, id. cmt. g.

. The dissent attempts to characterize Butler’s release of claims as a tangible thing, but the Restatement explains that only u[s]ome-times, [will] plaintiffs reliance .,. consist in receiving from the defendant, or relinquishing to him, some tangible thing, as by way of purchase or sale.” Id. cmt. c (emphasis added). Butler’s case does not involve a tangible thing. Instead, it involves a settlement agreement releasing intangible claims. See also id. cmt. f (explaining that relinquished assets "may be tangible or intangible”) (emphasis added).

. The dissent argues that Butler rendered performance in Montana because that is where he signed the release of claims. We do not agree that Butler’s act of signing a contract constitutes his performance under that contract,