**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ESG CAPITAL PARTNERS, LP, a Delaware Limited Partnership and Limited Partners, *Plaintiff-Appellant*, | No. 13-56684 D.C. No. 2:13-cv-01639-ODW-SH |
| v. | OPINION |
| TROY STRATOS, AKA Ken Dennis, *Defendant*, | |
| and | |
| VENABLE LLP; DAVID MEYER, *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted December 7, 2015
Pasadena, California

Filed July 11, 2016

Before: Harry Pregerson, Dorothy W. Nelson, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Pregerson

## SUMMARY*

### Securities

The panel affirmed in part and reversed in part the district court's dismissal for failure to state a claim of a securities fraud action brought by ESG Capital Partners, L.P., a group of investors formed to purchase pre-Initial Public Offering Facebook shares.

ESG Capital's managing agent negotiated the purchase of shares with an alleged con artist who was represented by defendant Venable LLP, a law firm. ESG transferred funds but never received the shares.

Reversing in part, the panel held that ESG Capital's federal securities fraud claim under § 10(b) of the Securities Exchange Act was sufficiently pled under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act. The panel held that Venable attorney David Meyer was the maker of alleged false statements and had a duty to disclose information to ESG. ESG pled facts that led to a strong inference of scienter. It also sufficiently pled reliance.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that ESG's state law fraud claim, which paralleled the federal securities fraud claim, was sufficiently pled under Fed. R. Civ. P. 9(b).

The panel held that ESG's nonfraud claims under California state law for conversion, unjust enrichment, unfair competition, aiding and abetting fraud, and conspiracy to commit fraud were sufficiently pled under Fed. R. Civ. P. 8(a)(2). The panel held that neither the aiding and abetting fraud claim nor the conspiracy claim was barred by Cal. Civ. Code § 1714.10's Agent's Immunity Rule, which shields an attorney who merely acted as an agent of a third party that had a duty to the plaintiff.

Affirming in part, the panel held that ESG's state law claim for breach of fiduciary duty, which alleged conduct that fell within the scope of providing legal services, was barred by Cal. Civ. Proc. Code § 340.6's one-year statute of limitations. The panel reversed the dismissal of ESC's other claims and remanded the case to the district court.

---

## COUNSEL

Margaret A. Grignon (argued) and Paula M. Mitchell, Reed Smith LLP, Los Angeles, California; William C. Nystrom, Michael Paris, and Jack I. Siegal, Nystrom Beckman & Paris LLP, Boston, Massachusetts; for Plaintiffs-Appellants.

Kevin S. Rosen (argued), Matthew S. Kahn, and Bradley J. Hamburger, Gibson, Dunn & Crutcher LLP, Los Angeles, California, for Defendant-Appellee Venable LLP.

David K. Willingham (argued) and Arwen Johnson, Caldwell Leslie & Proctor,  PC, Los Angeles, California;  for Defendant-Appellee David Meyer.

## OPINION

PREGERSON, Circuit Judge:

### INTRODUCTION

In this case we are dealing with the sufficiency of pleadings to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

We conclude that appellant's federal securities fraud claim is sufficiently pled under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5.

Appellant's state law fraud claim, which parallels the federal securities fraud claim, is sufficiently pled under Federal Rule of Civil Procedure 9(b). Appellant's nonfraud state law claims for conversion, unjust enrichment, unfair competition, aiding and abetting fraud, and conspiracy to commit fraud are sufficiently pled under Federal Rule of Civil Procedure 8(a)(2).

Only one of appellant's state law claims—breach of fiduciary duty—is barred by Cal. Civ. Proc. Code § 340.6's one-year statute of limitations.

Neither the aiding and abetting fraud claim nor the conspiracy to commit fraud claim is barred by Cal. Civ. Code § 1714.10's Agent's Immunity Rule.

## BACKGROUND[1]

ESG Capital Partners, L.P. ("ESG Capital") was a group of investors formed to purchase pre-Initial Public Offering ("pre-IPO") Facebook shares. Timothy Burns ("managing agent Burns") was ESG Capital's managing agent. Managing agent Burns negotiated the purchase of pre-IPO Facebook stock with a man he believed to be "Ken Dennis." In fact, "Ken Dennis" was an alias for Troy Stratos, an alleged con artist.

Venable LLP is a law firm with nine offices throughout the country, including Los Angeles. Venable LLP represented "Dennis" (aka Stratos) in the Facebook deal, which is the subject of this securities fraud suit. One of the partners in Venable LLP's Los Angeles office, David Meyer ("attorney Meyer"), was "Dennis's" principal contact at Venable LLP throughout the Facebook deal. At the time Venable LLP was representing "Dennis" in the Facebook deal, Venable LLP, but not attorney Meyer, also represented Stratos in an unrelated suit for the theft of $7 million.

Attorney Meyer assisted Stratos in creating Soumaya Securities, LLC ("Soumaya Securities")—a company that Stratos could use to conduct business without detection.

---

[1] The following facts are taken from ESG Capital's First Amended Complaint and are assumed to be true for the purposes of our review of the district court's 12(b)(6) dismissals. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1012 n.1 (9th Cir. 2005).

Attorney Meyer and Stratos named the company Soumaya Securities after billionaire Carlos Slim's late wife, Soumaya, and attorney Meyer told managing agent Burns that "Dennis" was affiliated with Slim. "Dennis" was not actually affiliated with Slim. And Soumaya Securities was not authorized to do business in California, had no bank accounts, and filed no tax returns.

Stratos, the alleged con artist, masqueraded as "Ken Dennis" in connection with all Soumaya Securities transactions, yet Soumaya Securities' operating documents, which attorney Meyer prepared, listed Stratos as Soumaya Securities' manager and sole member and "Kenneth Dennis" as its CEO. Attorney Meyer maintained a client trust account only for Stratos. As "Dennis," the CEO of Soumaya Securities, Stratos negotiated the sale of pre-IPO Facebook stocks to ESG Capital from March to April 2011.

Between February and November 2011, attorney Meyer met with Stratos 25 times in person and spoke to Stratos at least 100 times on the phone. Managing agent Burns had questions before confirming the deal and called attorney Meyer on April 18, 2011, to verify "Dennis's" representations. During their phone conversation, attorney Meyer informed managing agent Burns that "Dennis" was in contact with Facebook executives and had access to millions of Facebook shares. Attorney Meyer told managing agent Burns that "Dennis" "is who he says he is." In addition, attorney Meyer assured managing agent Burns that "Dennis" and Soumaya Securities were Slim's affiliates, that the sale was legitimate, that attorney Meyer represented "Dennis" and Soumaya Securities in the sale, and that attorney Meyer would provide deal documentation. ESG Capital pled that,

without attorney Meyer's assurances, ESG Capital would not have gone through with the deal.

The day after the April 18 phone call, ESG Capital wired $2.8 million into Venable LLP's trust account as a deposit. Attorney Meyer called managing agent Burns to confirm receipt of the funds and that the "deal is on." That day, the entire $2.8 million was deposited into Stratos's personal client trust fund account, not to any account for Soumaya Securities. Also that day, attorney Meyer had an all-day meeting with Stratos at Venable LLP's offices. ESG Capital pled that, had managing agent Burns known that the $2.8 million would not be held in trust pending the sale's completion, he would not have authorized attorney Meyer to release it.

Throughout the negotiations, managing agent Burns communicated with "Dennis" through Stratos's wpacquisitions@gmail.com email address—the same email address that attorney Meyer used with Stratos. Attorney Meyer was copied on some of managing agent Burns's emails to "Dennis" at the email address that attorney Meyer knew belonged to Stratos. Venable LLP interacted with Stratos often while Stratos negotiated his deal with ESG Capital, and Venable LLP performed various nonlegal tasks for Stratos, such as purchasing office supplies and car insurance.

In early May 2011, after ESG Capital had made its $2.8 million deposit, Stratos needed a bank account to deposit the funds. Stratos had been "black listed" from Citi and Wells Fargo due to his notoriety, his poor credit, and outstanding judgments against him. Venable LLP opened a bank account for Soumaya Securities at Bank of America. In early July 2011, "Dennis" told managing agent Burns that the deal was

imminent and that managing agent Burns needed to wire Soumaya Securities an additional $7.2 million. Again, attorney Meyer provided purchase documentation to managing agent Burns.

At managing agent Burns's request, documentation of the deposit stated that the funds were refundable, "in the event the pending transaction does not close as a result of the fault of the seller or the issuer." Managing agent Burns emailed confirmation to attorney Meyer and wired the money to Soumaya Securities' Bank of America account on July 12, 2011. Later that day, attorney Meyer emailed managing agent Burns to confirm receipt of the wire transfer, to which managing agent Burns responded, "Thanks David, Let's close a deal now!" Days after the wire transfer, Bank of America froze the Soumaya Securities account and then closed it on July 26. Venable LLP arranged to transfer the funds to a third party but never told ESG Capital.

In August 2011, "Dennis" told managing agent Burns that the deal was closing, and that he needed an additional $1.25 million to secure ESG Capital's shares. To receive this transfer, attorney Meyer opened a new bank account at UBS. Venable LLP listed Stratos—and not "Dennis"—as Soumaya Securities' "Beneficial Owner" on the UBS account. With this final transfer, ESG Capital's payments to Stratos totaled $11.25 million.

By December 22, 2011, ESG Capital still had not received the Facebook shares, and managing agent Burns threatened "Dennis" and attorney Meyer with legal action if its funds were not returned. In response, managing agent Burns received an email from Venable LLP's counsel, Stewart Webb, stating that "Venable received no such

transfer and has no knowledge of the alleged transfer." Managing agent Burns responded by identifying each of ESG Capital's wire transfers made at Venable LLP's direction, along with the email address for "Dennis." Webb replied that the contact information managing agent Burns provided for "Dennis" was filed at Venable LLP under the name Troy Stratos, whom Venable LLP believed to be related to "Dennis."[2] Webb told managing agent Burns that Venable LLP did not represent any party in the transactions between managing agent Burns and Soumaya Securities. Attorney Meyer was terminated by Venable LLP in 2012.

After learning that ESG Capital had been defrauded, managing agent Burns panicked and hid the news from ESG Capital. ESG Capital claims it did not learn of the alleged fraud and that their money had been stolen until November 2012.

ESG Capital filed suit against Stratos and Venable LLP and attorney Meyer on March 6, 2013, alleging eight causes of action: federal securities fraud, state law fraud, and six nonfraud state claims for conversion, breach of fiduciary duty, unjust enrichment, unfair competition, aiding and abetting fraud, and conspiracy to commit fraud. On May 23, 2013, the United States issued a superseding indictment against Stratos in connection with the Facebook fraud. On the defendants' motion, the district court dismissed ESG Capital's complaint without prejudice on June 26, 2013. The district court then dismissed ESG Capital's first amended

---

[2] Since the district court's dismissal of ESG Capital's complaint, ESG Capital has obtained a sworn deposition from the actual Kenneth Dennis, Stratos's stepbrother, stating, among other things, that Kenneth was in no way involved in the deal.

complaint ("FAC") with prejudice on August 15, 2013, denying leave to amend.

## STANDARD OF REVIEW

Rule 12(b)(6) and 9(b) dismissals are reviewed de novo. *In re Daou Sys.*, 411 F.3d at 1013. A complaint must include facts that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept as true the facts alleged in a well-pleaded complaint, but mere legal conclusions are not entitled to an assumption of truth. *Id.* at 678–79.

A plaintiff alleging fraud must overcome a heightened pleading standard under Rule 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To allege federal fraud, a plaintiff must also plead scienter with particularity. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

Nonfraud claims must survive the minimal notice pleading requirements of Rule 8(a)(2) and provide a short and plain statement to survive a motion to dismiss. Fed R. Civ. P. 8(a)(2).

## DISCUSSION

### I.   ESG Capital's § 10(b) Federal Securities Fraud Claim

To state a federal securities fraud claim, in violation of § 10(b), a plaintiff must show: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Thompson v. Paul*, 547 F.3d 1055, 1061 (9th Cir. 2008) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008)).

Section 10(b) is the general anti-fraud provision of the Securities Exchange Act of 1934.  15 U.S.C. § 78j(b).  Its requirements operate in conjunction with Securities and Exchange Commission Rule 10b–5.  As this court has explained,

> Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), makes it unlawful "for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]"  SEC Rule 10b–5, promulgated under the authority of section 10(b), in turn, provides:

> It shall be unlawful for any person . . . (a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.  17 C.F.R. § 240.10b–5.

*In re Daou Sys.*, 411 F.3d at 1014 (alterations in original). The 1995 Private Securities Litigation Reform Act ("PSLRA") raised the pleading standard for federal securities fraud claims under § 10(b) of the Securities Exchange Act by adding that a plaintiff must plead with particularity both falsity and scienter.  15 U.S.C. § 78u-4(b)(1)–(2).  A plaintiff must "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention to deceive, manipulate, or defraud." *Tellabs, Inc.*, 551 U.S. at 313 (internal quotation marks omitted).  The federal standard is thus higher than the Rule 9(b) standard for common law fraud allegations, which requires that a plaintiff plead with particularity only the circumstances constituting fraud, while other circumstances, such as intent, may be stated generally.  Fed. R. Civ. P. 9(b); *see also In re Daou Sys.*, 411 F.3d at 1014–15 (discussing how the PSLRA raised the pleading standard).

The court evaluates the complaint as a whole to determine if the facts give rise to a strong inference of scienter, considering competing nonfraudulent inferences.  *Tellabs*, 551 U.S. at 322–23.  A strong inference is one that is "cogent

and *at least as compelling* as any opposing inference of nonfraudulent intent." *Id.* at 324 (emphasis added). That is, the fraudulent inference need not be more compelling than its nonfraudulent alternatives; if two possible inferences—one fraudulent and the other nonfraudulent—are equally compelling, a plaintiff has demonstrated a strong inference of scienter.

According to the district court, ESG Capital failed to sufficiently plead the first, second, and fourth elements: (1) material misrepresentation or omission, (2) the defendant's scienter, and (4) the plaintiff's reliance. We find that the district court erred and that ESG Capital sufficiently pled its § 10(b) securities fraud claim.

## A.  Material Misrepresentations or Omissions

Venable LLP maintains that ESG Capital failed to plead that attorney Meyer made material misrepresentations or omissions. To make misrepresentations under § 10(b), attorney Meyer must be the "maker" of the statements. *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142–43 (2011). In addition, if an attorney has a duty to disclose, the attorney is liable for failing to provide truthful, nonmisleading information. *Thompson*, 547 F.3d at 1063.

### i.  Meyer was the Maker of the False Statements

"[T]he maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it." *Janus Capital Grp.*, 564 U.S. at 144. Merely preparing or publishing another's statement does not make someone the "maker" of the statement, and attribution to another party generally indicates that the attributed party

is the "maker." *Id.* at 142–43. In *Janus*, the Supreme Court considered whether an investment fund or its wholly owned subsidiary of investment advisers was the "maker" of false statements in its investment prospectus. The investment fund owned the subsidiary, but the two corporate entities were legally separate, with separate boards of trustees. *Id.* at 146–47. The investment fund had a statutory obligation under the SEC to file an investment prospectus. *Id.* at 147. The Supreme Court held that, although the investment advisers were significantly involved in preparing the prospectuses, their assistance was "subject to the ultimate control" of the investment fund. *Id.* at 148. The investment fund was thus the "maker" of the statements in its prospectus. *Id.*

ESG Capital alleged that attorney Meyer made multiple statements regarding the securities sale. The district court found that attorney Meyer did not make material misrepresentations or omissions, since "Meyer simply communicated Soumaya [Securities's] understanding of the deal, not his own." Attorney Meyer prefaced many of his emails with: "It is Soumaya's understanding . . . ." While it is true that attributing a statement to another party generally indicates that party as the "maker" of the statement, *see id.* at 142–43, we are not convinced that such a short, easy preface could shield a messenger from liability in all circumstances.

Even assuming that this disclaimer was sufficient to indicate that Soumaya Securities or Stratos was the "maker" of the statements in attorney Meyer's emails, attorney Meyer made other false statements directly to ESG Capital. Attorney Meyer told managing agent Burns that "he represented 'Ken Dennis' and Soumaya Securities in connection with pre-IPO Facebook transactions," that

"Dennis" was affiliated with Slim, and that Dennis "is who he says he is." Yet Soumaya Securities was not affiliated with Slim, contrary to attorney Meyer's representations, and "Dennis" was not who he purported to be.

Attorney Meyer corresponded with Stratos at Stratos's wpacquisitions@gmail.com email address —the same email address that Stratos used as "Ken Dennis" in its communications with ESG Capital. Attorney Meyer was copied on emails between ESG Capital and "Dennis" at this email address, so attorney Meyer must have known that ESG Capital believed it was communicating with "Ken Dennis" when it was actually emailing Troy Stratos. Finally, attorney Meyer told ESG Capital that its $2.8 million deposit would be released to Soumaya Securities, when in fact it was put into Stratos's personal client trust account.

Unlike the statements in the *Janus* investment prospectus, which were reasonably attributed to the investment fund, attorney Meyer made assurances to managing agent Burns on his own behalf. Attorney Meyer detailed his relationship to "Dennis" and made personal assurances regarding the Facebook deal and ESG Capital's deposit.

Not only did attorney Meyer make false statements to managing agent Burns, he also made material omissions when he failed to reveal that there was no Facebook deal; that Stratos, not Soumaya Securities, was Venable LLP's client; and that ESG Capital's $2.8 million deposit would be immediately dispersed to Stratos.

### ii.  Meyer Had a Duty to Disclose to ESG Capital

When attorneys have a duty to disclose information to third parties, they may be liable for misrepresentations under § 10(b).  *Thompson*, 547 F.3d at 1061.  In determining whether an attorney is liable under § 10(b), this court in *Thompson* surveyed other circuits' decisions, finding that attorneys may have a duty to nonclient third parties.  *Id.* at 1061–63.  In our survey of third party duties in *Thompson*, we took note of the Sixth Circuit's decision in *Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263 (6th Cir. 1998) (en banc).  In *Rubin*, an attorney represented a company in connection with the sale of the company's debt and stock.  *Thompson*, 547 F.3d at 1061–62 (citing *Rubin*, 143 F.3d at 266–68).  The attorney assured a prospective investor that the company's stock was "fine," when the attorney knew that the company was actually in default on a loan, and the investment would have constituted further default.  *Id.*  The Sixth Circuit en banc panel held that the attorney had a duty to the investor, even though the investor was not his client.  *Id.*

Applying *Rubin*'s logic, this court in *Thompson* ultimately articulated the following rule: "An attorney who undertakes to make representations to prospective purchasers of securities is under an obligation, imposed by Section 10(b), to tell the truth about those securities."  *Id.* at 1063.

Venable LLP argues that *Thompson* applies only when an attorney represents the seller of securities.  Venable LLP contends that Facebook was the seller of the pre-IPO securities while Stratos was merely a middleman.  As the argument goes, since attorney Meyer represented a nonseller,

attorney Meyer cannot be liable under the rule articulated in *Thompson*.

Venable LLP's argument fails for two reasons. First, Venable LLP mischaracterizes the rule in *Thompson*, which explicitly states, "That [the attorney] may have an attorney–client relationship with the seller of the securities is irrelevant under Section 10(b)." *Id.* Second, it is true that Stratos was not the original seller of the securities, but Stratos was the seller for ESG Capital's purposes. ESG Capital dealt only with Stratos and paid Stratos for the pre-IPO stocks. Facebook took no part in the sale between ESG Capital and Stratos and therefore cannot be considered the seller. What's more, taking ESG Capital's allegations as true—as we must at the pleading stage—there was no actual seller, certainly not Facebook. It thus defies logic to shield Venable LLP and attorney Meyer from liability under the theory that they did not represent Facebook, whom they consider the true seller, when they did represent Stratos, who acted as the seller.

## B.  Scienter

ESG Capital must plead facts that lead to a strong inference of scienter. *Tellabs*, 551 U.S. at 322. ESG Capital can prove scienter by showing deliberate recklessness or "some degree of intentional or conscious misconduct." *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999)).

The district court held that "[n]othing Meyer did for Stratos or Soumaya [Securities] was inherently suspicious—and thus does not bespeak his knowledge of the fraud. That Meyer knew some details of the purported Facebook

transaction, set up several bank accounts for Soumaya [Securities], facilitated wire transfers from ESG Capital on behalf of Soumaya [Securities], and disbursed funds to Stratos fails to demonstrate that Meyer knew there was no actual deal in the works." But the district court applied the scienter pleading standard too stringently; while federal securities fraud claims require more particularized pleadings, the standard is not insurmountable. ESG Capital need not prove its case at the outset. Rather, it has to provide a narrative of fraud—facts which, if true, substantiate an explanation at least as plausible as a nonfraudulent alternative. While no single factual allegation substantiates an inference of attorney Meyer's scienter, ESG Capital has provided a narrative that strongly points to the existence of scienter.

ESG Capital sufficiently pled facts supporting a strong inference that attorney Meyer knew that Stratos was using the alias "Dennis" and that ESG Capital believed it was communicating with "Dennis," not Stratos. Attorney Meyer emailed Stratos at Stratos's wpacquisitions@gmail.com email address. ESG Capital emailed "Dennis" at this same email address. Attorney Meyer was copied on emails from ESG Capital to "Dennis" at that email address.

ESG Capital also provided facts sufficient to support the inference that attorney Meyer knew Stratos's identity and scheme. Between February and November 2011, attorney Meyer and Stratos had more than 100 phone conversations and 25 in-person meetings. ESG Capital pled that attorney Meyer held an all-day conference with Stratos after ESG Capital wired its $2.8 million deposit. Attorney Meyer then consistently authorized payments from Stratos's client trust account between April 20, 2011, through July 2011. Venable

LLP opened bank accounts for Stratos, since he was "black listed" and unable to open bank accounts in his own name. Venable LLP also performed thousands of dollars' worth of nonlegal services for Stratos, such as buying office supplies and car insurance. Certainly, ESG Capital has pled facts sufficient to show a cogent and compelling inference of scienter.

## C.  Reliance

Because the complaint alleges a "causal connection between the alleged fraud and the securities transaction," ESG Capital sufficiently pled reliance. *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009) (per curiam). Although negotiations between ESG Capital and Stratos were underway before attorney Meyer became involved, ESG Capital had not wired any money to Stratos prior to attorney Meyer's involvement. ESG Capital pled that after attorney Meyer told managing agent Burns that the "deal is on," ESG Capital wired the $2.8 million deposit. Notably, this first transfer was made the day after attorney Meyer assured managing agent Burns that "Dennis" was who he said he was and that the deal was legitimate. In addition, ESG Capital pled that it wired $11.25 million to Soumaya Securities in direct reliance on attorney Meyer's assurances and involvement. Since ESG Capital showed that it wired funds to ESG Capital only after attorney Meyer's assurances, it established the causal connection necessary for reliance.

## II.  ESG Capital's State Law Fraud Claim

The pleading standard under Rule 9(b) for state law fraud claims is lower than the federal PSLRA standard, as Rule 9(b) requires particularity only in regard to the circumstances

of fraud, while "[m]alice, intent, knowledge, and other conditions of a person's mind" may be pled generally. Fed. R. Civ. P. 9(b); *see also In re Daou Sys.*, 411 F.3d at 1014–15 (describing how the PSLRA heightened Rule 9(b) fraud pleading standards for private securities fraud claims). As discussed, ESG Capital's pleadings meet the PSLRA standard. Its complaint necessarily meets the Rule 9(b) standard as well.

## III.     California Civil Procedure Code § 340.6's One-Year Statute of Limitations

The district court held that ESG Capital's state law claims for conversion, breach of fiduciary duty, unjust enrichment, unfair competition, aiding and abetting fraud, and conspiracy to commit fraud were barred by the one-year statute of limitations articulated in California Civil Procedure Code § 340.6. Section 340.6 applies to conduct that falls within the scope of providing legal services. *See* Cal. Civ. Proc. Code § 340.6(a) ("An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission."). In applying § 340.6, the district court focused on Venable LLP's possible role as an escrow agent holding funds for ESG Capital. It held that ESG Capital failed to establish an escrow relationship and therefore did not show that Venable LLP was acting outside the scope of providing legal services. The district court found that, because Venable LLP was providing legal services, the one-year statute of limitations applied and barred ESG Capital's state law claims.

The California Supreme Court has explained that § 340.6 does not apply merely because an attorney's alleged misconduct "occurs during the period of legal representation or because the representation brought the parties together and thus provided the attorney the opportunity to engage in the misconduct." *Lee v. Hanley*, 61 Cal. 4th 1225, 1238 (2015) (holding that § 340.6 did not bar plaintiff's fee dispute claim that attorney refused to return unearned attorney's fees, because the claim could also be construed as conversion). The court in *Lee* recognized that attorneys often have the same obligations as nonattorneys and explained that the question is "not simply whether a claim alleges misconduct that entails the violation of a professional obligation. Rather, the question is whether the claim, in order to succeed, necessarily depends on proof that an attorney violated a professional obligation." *Id.*

It is therefore not dispositive that Venable LLP did not act as escrow agent for ESG Capital or that ESG Capital's claim arises from Venable LLP and attorney Meyer's attorney relationship to Stratos. The question is whether ESG Capital's claims for conversion, breach of fiduciary duty, unjust enrichment, and unfair competition "necessarily depend on proof that [Venable LLP and attorney Meyer] violated a professional obligation in the course of providing professional services." *Id.* at 1239. Only ESG Capital's breach of fiduciary duty claim necessarily involves the violation of a professional obligation and is therefore subject to the one-year statute of limitations of § 340.6. *See Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1121–22 (2014), *as modified on denial of reh'g*

(Feb. 27, 2014).**³**  ESG Capital's other claims for conversion, unjust enrichment, and unfair competition do not so depend.

## IV.     The Agent's Immunity Rule

The district court dismissed ESG Capital's aiding and abetting and conspiracy to commit fraud claims, holding that these claims were barred by the Agent's Immunity Rule.**⁴** The Agent's Immunity Rule shields an attorney who merely acted as an agent or employee of a third party when the third party had a duty to the plaintiff.  Cal. Civ. Code § 1714.10. The Rule does not shield an attorney who had an independent legal duty to the plaintiff, or an attorney who went beyond a professional duty as part of a conspiracy for the attorney's financial gain.  Cal Civ. Code § 1714.10(c); *Rickley v. Goodfriend*, 212 Cal. App. 4th 1136, 1149 (2013), *reh'g denied* (Feb. 5, 2013), *review denied* (Apr. 10, 2013).

ESG Capital's aiding and abetting fraud and conspiracy to commit fraud claims satisfy the independent legal duty exception to the Agent's Immunity Rule.  "It is well established that an attorney has an independent legal duty to

---

**³** In the alternative, ESG Capital argues that the one-year period did not begin until November 2012, since Burns initially hid the fact that the Facebook deal was fraudulent.  This argument is not persuasive, however. As ESG Capital's managing partner, Burns's knowledge is imputed to ESG Capital.  ESG Capital thus acquired sufficient notice to start the limitations period in December 2011, when Burns threatened Meyer with legal action on December 22, after it had not received any Facebook shares.

**⁴** In applying the Agent's Immunity Rule, the district court relied on its finding that Venable LLP was not acting as an escrow agent.  While Venable LLP's acting as escrow agent would be sufficient to establish a duty for this claim, it is not necessary.  *See Lee*, 61 Cal. 4th at 1238.

refrain from defrauding nonclients." *Rickley*, 212 Cal. App. 4th at 1151. Moreover, attorney Meyer had an independent legal duty to ESG Capital when he accepted and disbursed ESG Capital's funds. *Id.* at 1156–57 (holding that attorneys had an independent legal duty to a third party when they held their clients' funds in a trust account, to be dispersed to their clients and third parties). As a result, ESG Capital's aiding and abetting and conspiracy to commit fraud claims are not barred by the Agent's Immunity Rule.[5]

## V.  ESG Capital's State Law Claims

The district court did not discuss the merits of ESG Capital's state law claims, finding that they were either time-barred or precluded by the Agent's Immunity Rule. Because we find, at this stage, that only ESG Capital's breach of fiduciary duty claim is barred by § 340.6 and that the Agent's Immunity Rule does not apply to ESG Capital's aiding and abetting and conspiracy claims, we address whether ESG Capital sufficiently pled its state law claims for conversion,

---

[5] ESG Capital must show an independent legal duty to avoid application of the Agent's Immunity Rule; yet it must show absence of a professional obligation to avoid § 340.6's statute of limitations. Because the parties have not addressed this issue and the issue cannot be resolved on the face of the complaint, we leave it to be considered by the district court on remand if necessary after discovery. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) ("A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint.") (internal quotation marks omitted); *Lee*, 61 Cal. 4th at 1240 (finding dismissal under the Agent's Immunity Rule inappropriate because, without factual development, it could not be said that a claim "necessarily depend[ed] on proof that [the defendant] violated a professional obligation").

unjust enrichment, unfair competition, aiding and abetting fraud, and conspiracy to commit fraud.

**Conversion.**  To allege conversion, a plaintiff must show: (1) it possessed property, (2) the defendant disposed of the property in a manner inconsistent with the plaintiff's property rights, and (3) damages.  *Lee*, 61 Cal. 4th at 1240.  A specific sum of money may constitute property for a conversion action.  *Id.*  Here, ESG Capital sufficiently alleged that it transferred funds to attorney Meyer and Venable LLP, who placed those funds into a client trust account for the purpose of ESG Capital's stock purchase.

Furthermore, an unauthorized transfer of funds is sufficient to constitute disposal of a plaintiff's funds in a manner inconsistent with the plaintiff's rights.  *See Virtanen v. O'Connell*, 140 Cal. App. 4th 688, 707–08 (2006).  ESG Capital satisfied the disposal element when it alleged that attorney Meyer placed its funds into an unauthorized client trust account and issued checks to Stratos and Venable LLP using those funds without ESG Capital's knowledge or permission.  ESG Capital has pled $2.8 million in damages, as the value of the property at the time of the conversion. ESG Capital thus sufficiently pled its conversion claim.

**Unjust Enrichment.**  Some California courts allow a plaintiff to state a cause of action for unjust enrichment, while others have maintained that California has no such cause of action.  *Compare Prakashpalan*, 223 Cal. App. 4th at 1132 (allowing plaintiffs to state a cause of action for unjust enrichment) *with Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("There is no cause of action in California for unjust enrichment.") (internal quotation marks and citation omitted).  While California case law appears

unsettled on the availability of such a cause of action, this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'") (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). We therefore allow the cause of action, as we believe it states a claim for relief as an independent cause of action or as a quasi-contract claim for restitution.

To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense. *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000). ESG Capital alleged that attorney Meyer and Venable LLP (1) received $2.8 million from ESG Capital, (2) promised to hold the deposit in a client trust account for Soumaya Securities, (3) promised that those funds would be refundable, (4) actually placed those funds in a client trust account for Stratos, and (5) paid themselves $350,000 with those funds. These allegations are sufficient to show that attorney Meyer and Venable LLP received and unjustly retained $350,000 at ESG Capital's expense. Alternatively, ESG Capital's allegation of fraud resulting in the defendants' unjust enrichment sufficiently states a claim under quasi-contract. *See Astiana*, 783 F.3d at 762.

**Unfair Business Practices.** To allege unfair business practices, ESG Capital must show that attorney Meyer and Venable LLP's business practices were unfair, unlawful, or fraudulent. Cal. Bus. & Prof. Code § 17200, *et seq.* A fraudulent business practice is one likely to deceive the

public.  *See Prakashpalan*, 223 Cal. App. 4th at 1134 (allowing plaintiffs to state a cause of action for unfair business practices when they alleged that attorney-defendants stole client funds and violated their duty of confidentiality). A business practice is unfair when it "significantly threatens or harms competition."  *Id.* at 1133 (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal 4th 163, 187 (1999)).  ESG Capital sufficiently pled fraudulent or unfair competition when it alleged that attorney Meyer and Venable LLP: (1) assisted Stratos to "use[] ESG Capital's funds as his personal piggybank," (2) placed ESG Capital's funds into an unauthorized client trust account, and (3) issued checks to themselves using ESG Capital's funds without ESG Capital's knowledge or permission.

**Aiding and Abetting Fraud.**   To allege aiding and abetting, a plaintiff must show that the defendant knowingly: (1) substantially assisted or encouraged another to breach a duty, or (2) substantially assisted another's tort through an independently tortious act.  *See Casey v. United States Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005).  Notably, both avenues require actual knowledge; however, as previously discussed, ESG Capital has sufficiently pled knowledge for the purposes of its common law fraud claim. Since it alleged that attorney Meyer knew Stratos's real identity and helped him create Soumaya Securities as part of the fraudulent Facebook deal, ESG Capital has pled actual knowledge of fraud and substantial assistance for its aiding and abetting fraud claim.

**Conspiracy to Commit Fraud.**   To allege a conspiracy to commit fraud, a plaintiff must show: (1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from

the wrongful conduct. *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995). As with aiding and abetting, conspiracy involves actual knowledge of the plan. *Id.* ESG Capital alleged formation of the conspiracy by showing that attorney Meyer helped create Soumaya Securities, knowing it was unaffiliated with Slim and was instead an empty shell unable to conduct business. As with aiding and abetting, ESG Capital satisfied the wrongful conduct element through its allegations of attorney Meyer's participation in creating Soumaya Securities, vouching for "Dennis," accepting and dispersing ESG Capital's deposit, and facilitating the fraudulent deal. As previously mentioned, ESG Capital has pled $2.8 million in damages. ESG Capital has sufficiently pled conspiracy.

## VI.     The Doctrine of In Pari Delicto Does Not Apply

The district court did not address Venable LLP's alternative theory of dismissal under the In Pari Delicto doctrine. Under the In Pari Delicto doctrine, "a plaintiff who has participated in wrongdoing cannot recover when he suffers injury as a result of the wrongdoing." *First Beverages, Inc. of Las Vegas v. Royal Crown Cola Co.*, 612 F.2d 1164, 1172 (9th Cir. 1980). Managing agent Burns, ESG Capital's sole managing partner, pled guilty to stealing funds from another investment fund: ESG Capital Capital Partners II, LLP. (Apparently, managing agent Burns gives all of his partnerships the same name, Executive Services Group.) Taking ESG Capital's pleadings as true, it appears that managing agent Burns's guilt is wholly unrelated to the plaintiffs in this case. Although managing agent Burns did spend investor money, it was not the same investors or money at issue here; managing agent Burns did not participate in the wrongdoing alleged here but defrauded a different group of

investors with respect to a separate and unrelated investment fund. Consequently, Venable LLP and attorney Meyer cannot successfully assert an In Pari Delicto defense.

## CONCLUSION

ESG Capital sufficiently pled its federal fraud claim; it therefore also sufficiently pled its parallel state fraud claim. Only one of ESG Capital's state nonfraud claims, breach of fiduciary duty, is barred by § 340.6's one-year statute of limitations. Its aiding and abetting and conspiracy claims are not barred by the Agent's Immunity Rule. ESG Capital sufficiently pled its state law claims for conversion, unjust enrichment, unfair business practices, aiding and abetting fraud, and conspiracy to commit fraud.

We therefore affirm the district court's dismissal of ESG Capital's breach of fiduciary duty claim as time-barred and reverse the district court's dismissal of all other claims under Rules 12(b)(6) and 9(b).

**AFFIRMED in part, REVERSED in part, and REMANDED.**